Please be seated. The clerk called the next case, please. 3.0772 People of the State of Illinois Counseling by Thomas Arado v. Mary Warrington, and run by Brian Cohut. Mr. Cohut, good morning. May it please the court. Good morning, Your Honor, Counsel. My name is Brian Cohut. I'm an Assistant Appellate Defender with the Office of the State Appellate Defender. I represent Mr. Aaron Warrington, the defendant in this criminal case. Following a jury trial in Warren County, Mr. Warrington was convicted of threatening a public official, resisting a police officer, and fleeing or attempting to elude a peace officer. On appeal, he raises four issues. Two of these are credit issues and state-confessed error, and the other two deal with the threatening of a public official conviction. One is that the evidence was insufficient to convict him beyond reasonable doubt, and the second issue is that the jury was improperly instructed as to this offense. The defendant was stopped by Monmouth Police Officer Terry Heppner for having his music too loud. When Heppner approached the vehicle, he had some words with Mr. Warrington. Mr. Heppner went back to his police car to get his tickets, citation slips, and as he was walking back to his police car, Mr. Warrington said, See ya, Hepp, and left the scene. He drove about five or six blocks and parked in his girlfriend's driveway, where he lived as well, then got out of his car and waited for Mr. Heppner to arrive. Mr. Heppner pulled his police vehicle up, got out of the car, Mr. Warrington and Mr. Heppner had words, Mr. Warrington resisted arrest, and Heppner finally was able to corral him, placed him in the back of the vehicle. The whole time, Mr. Warrington was vociferously objecting to his being stopped, his being arrested, and his being placed in a police vehicle. On the way to the jail, Mr. Warrington spouted off a series of generalized statements. He expressed his displeasure with Heppner. He said things like, You ain't nothing. You're messing with the wrong person. Don't you look down the road from me. Heppner's a racist, lowlife peckerwood. You got any kids? You're lucky it didn't get worse. Pushing me around again like that, see what happens. You ain't tough. And finally he said, I would beat your ass if you weren't a cop. I can't wait for you to retire. The only thing that saved you was that badge. These statements made to Officer Heppner in the back of the squad car were nothing more than generalized threats. The Threatening a Public Official Statute requires that when the statements are made to a police officer, that these statements contain specific facts indicative of a unique threat to that officer. And this is an element of the offense under the statute. But not an element of the offense that's charged in the information or indictment or whatever we have here. Well, it was not charged in the information, that's correct. That's correct, Your Honor. But it is an element of the offense. It has to be proved to the jury beyond a reasonable doubt. When the General Assembly added the police officer to the Threatening a Public Official Statute, it included the police officer and with the caveat that any statements made to the police officer had to contain specific facts indicative of a unique threat. Therefore, it's an element of the offense that has to be proved to the jury beyond a reasonable doubt when the police officer is that public official. And that's found by the Fourth District and people he hails. But defense counsel didn't challenge the charging instrument, didn't move to dismiss because it didn't state an offense since the victim was a police officer? That's correct. He did not. But it should have been instructed to the jury and the jury should still have found this element beyond a reasonable doubt. So it's a question here, the jury has to find this element. It's one of the elements of the offense. The jury has to find it beyond a reasonable doubt. And Mr. Warrington's argument here, well, two parts. In the first issue, saying that no rational jury could have found this element to have been proved beyond a reasonable doubt. And then the second part of the argument is that the jury was never instructed that this was an element of the offense. When was that statute amended to change the language? It was 2008, Your Honor. And this complaint was filed? 2011. So do you think maybe the prosecutor was asleep at the wheel and didn't even know about the change? I think so. I think everybody in this case did not know about the change. Including the judge? The judge included. Yes, and the IPI hasn't caught up with it either. Otherwise, I don't think we would have had this error if all these people would have been apprised, if the IPI would have been caught up. But you have to cross-reference your cases here. You have to cross-reference the information with the IPI. You have to present the proper issues to the jury. And here, the jury was never given that instruction, as argued in the second issue. And it still had to find that element proven beyond a reasonable doubt. And Mr. Warrington states here that none of those statements that were made in the squad car amounted to specific facts indicative of the unit. He was in a rant. He was in a tirade. He was making generalized, what would constitute generalized threats. Now when they got to the jail, just following this tirade, according to Officer Hettner's testimony, and an intern that was riding along with Hettner, Anthony St. Clair, Mr. Warrington said that he was going to headbutt Hettner. Now, this statement has to be considered in context with his previous tirade in the squad car. Because still, the jury has to find that any statements must have placed Hettner in reasonable apprehension of immediate bodily harm. This statement would not have placed him in reasonable apprehension of bodily harm, given the context of the statement. He just made this tirade, saying, you're nothing but a bitch, I'm going to beat your ass. His headbutt statement was just more of the same rant that he had begun earlier in the squad car. And furthermore, Mr. Warrington is 5'8", he's 135 pounds. Hettner, according to the video, he looks like he's about twice his size. Everybody knew Mr. Warrington. Everybody in town knew him. The judge said, I've known you, I've known you to play basketball with you before. I know you're a hothead. Hettner would have known he's a hothead. He's dealt with him on several occasions before. He simply would not have taken this threat seriously. And therefore, his conviction should be reversed because there's insufficient evidence for any rational triad effect to find him. Mr. Warrington made a threat to this police officer. Turning just briefly to the second issue, as we discussed previously, the jury was not instructed on this element that the jury must find specific facts indicative of a unique threat, rather than a generalized threat. It was never given that instruction. It never made any findings regarding that. And furthermore, the instructions regarding the reasonable apprehension of bodily harm were contradictory. This language was contained in the issue's instruction, but the language was not contained in the definition's instruction. So we have two different contradictory instructions for the jury to view. We don't know which instruction the jury looked at. And neither instruction included the special or unique threat directed at a police officer? Absolutely not. No, that element was not contained in the instructions whatsoever. So even if the issue's instruction and the definition's instruction had been consistent, the jury was not properly instructed as to the law? We still have an error. It's compounded here by the multiple problems with the instructions. Mr. Warrington asked that this court review this issue under plain error because it severely threatened his right to a fair trial. The instructions here are just so completely inadequate that we don't know what the jury found. We have no idea because it was just improperly instructed. There was a missing element, as Justice Wright pointed out, and there were contradictory instructions here. Under Ogunsula and Hale, the failure to instruct on specific facts indicative of a unique threat amounts to reversible error under Supreme Court Rule 451C. And under Jenkins, the contradictory instructions amounts to reversible error under 451C. So in the combination of them, clearly, we have a plain error here, Your Honors. Can I complicate the issues? Absolutely, Your Honors. Which I don't mean to do, but on the jury instruction issue, you're asking for a new trial. And I'm struggling with that because of the principles of double jeopardy. Because the acts that would support a new trial... Well, Mr. Warrington does complain that the evidence was insufficient to find him guilty beyond a reasonable doubt. Okay, but playing the devil's advocate, perhaps the evidence was sufficient on the charge that he faced, which was an improper charge. That's correct. But the offense, in order to convict him, the jury would have had to have found the element of the offense. And the offense as listed contains this element. It was not charged. Sure, but it's just he was not convicted of this offense at all, this statutory offense. His actions did not constitute a criminal act under the criminal code. That would be my response to that issue that you may be raising, perhaps with the double jeopardy problem. His acts did not constitute a criminal act under the code. So then why are you asking, it's just a backup position, why are you asking for a new trial? Well, the typical jury instruction problem is a new trial. Here he's arguing both, that the evidence was insufficient to prove him beyond a reasonable doubt. And part of it is because we don't know what the jury was told here. We don't know what the jury found here, I'm sorry. Were there other allegations and evidence regarding threats related to his children knowing where they lived? He tried to say, well, I was just trying to get your sympathy because it was Easter, but you need to say something about, don't you live right down the road from me? I know you've got kids or something of that nature that, even if it was properly charged, perhaps is enough for the jury to have found all the elements met. Essentially, you're asking if this error was harmless. I mean, if the jury was properly charged, whether they could have found these instances as specific acts. You're saying that there isn't enough evidence beyond a reasonable doubt. I'm just saying, are you saying that those aren't enough elements? Are there enough, I guess, specific threats? That's precisely Mr. Warrington's argument. Those statements do not include specific facts indicative of a unique threat. They're generalized threats. What Mr. Warrington stated was, don't you have kids? He doesn't say, I know you have kids. I know how old they are. I know what time they get out of school. Those are specific facts indicative of a unique threat. Here he's just saying, don't you have kids? He's not even saying, no, I know you have kids. Also, he said, don't you live right down the road from me? He doesn't necessarily say, I know where you live. I'm coming to your house. I'm going to take care of you. I think when you're looking at it, it's relatively difficult because we're dealing with words here. We're dealing with speech. How far does it go? What I think this court should look at is whether those specific facts include two things, a specific act and a temporal requirement. Here he does not state any specific acts. I mean, the closest he gets is, I'm going to beat your ass. I really don't know what that means other than, you know, maybe he's going to challenge him to a fight on some future occasion. He doesn't say, look, some of the other cases that have dealt with these types of threats. And Hale is a perfect example. In Hale, the defendant said, I know where you live. As soon as I get out of jail, I'm going to come over to your house, I'm going to slit your throats, and I'm going to play in your warm blood. Those are specific facts indicative of a unique threat. It's a far cry from that for a criminal defendant to say, don't you have kids? Don't you live right around the corner from me? You're nothing. I could whoop your ass. Those are specifically the types of statements that the General Assembly wanted to preclude from this threatening of public official statute. And you still have the problem that the jury wasn't instructed. Absolutely. And the jury, we don't know what the jury found. It's not instructed properly. Any other questions? For the foregoing reasons? I have a question on the cost issue. Okay. And it's just the soapbox that I'm on. Recently, you've probably noticed in some of the decisions. With regard to fines, you're asking for a $5 a day credit towards the fine that the court imposed, and you cite the record that is the clerk's cost sheet and allege that the court ordered that. Well, I also cited to the record and C-44 is the court's order, and he orders court costs. Okay, but you're saying that it's not the cost that he gets credit for at the rate of $5 per day. It's the fine. Well, it's what has been interpreted by the court as a fine. Is there anything signed by the judge in this case ordering? The $30 child advocacy center fee? No, there's nothing signed by the judge ordering that specific fee. It's just the judge says, I'm going to order you to pay court costs. Apparently, that includes that. Do you think the clerk's sheet is enough to impose that fine for purposes of the $5 credit? I think the court's order here telling the clerk to impose court costs is enough to direct the clerk to impose costs that the clerk thinks are costs, which turn out to be fines under our court's jurisprudence. And there was no motion attacking sentence in this case. That's correct. So why isn't it forfeited? The fines issue, Your Honor? Yes. I believe there's case law indicating that it can be brought. The credit per diem can be brought up at any time presupposing there was a fine imposed by the court. I don't quite understand where you're going. Well, in order to get it in front of us, you have to say, okay, we didn't do a motion to reconsider the sentence, which allegedly didn't allow the proper credit to fine. The court didn't order. The clerk didn't impose. So I don't understand why the appellate defender is not addressing why we have jurisdiction to consider a sentencing issue that was not presented to the trial court to hear. Well, it would be a matter of plain error. I don't think it's a question of jurisdiction. I think it's a plain error issue. And so what's happening is the state is conceding the argument without ever addressing forfeiture either. And I just find it a little troubling. Nothing you can say. I think that the error is clear given the court's case law. He should be allowed that $5 a day per diem applied to a child advocacy center fee, fine, fee, whatever you want to call it. The problem that I'm seeing over and over and over again, and it also occurs in this case, is the clerk's fees that you attach or that is in the record is dated after the date of the sentencing hearing. So how can a defendant challenge a cost fine or fee that is imposed after the date of the sentencing order and never approved by the judge? Well, I think that's county specific. I think what you're alluding to in recent opinions that I believe you've authored, those are county specific. I think that's a problem with that county. That's not what we have here. What we have here is the court imposing costs and telling the court, you know, impose costs. The court goes back and says, okay, these are costs. And so it imposes those costs on the defendant. Okay, can you tell me if the court imposed the same costs on the two misdemeanor charges? Because we were only given a page in the record with felony costs and no misdemeanor costs. So I'm assuming if we agree with you that the conviction on the felony should be reversed and the evidence would be insufficient, then the same costs stand on the misdemeanor charges and have not been challenged by you? I don't know if he imposed costs on the misdemeanor. He did. He ordered costs, 120 days and costs on one and costs on the other. But your arguments don't challenge those, and I don't even have a record of whether those costs were imposed. So what do we do if we agree with you that the felony should be set aside? Do we only address the costs in the felony case? That's accurate, Your Honor. As far as I know, the court costs were not imposed in the A misdemeanors. I don't know. I mean, I trust you, certainly. Okay, I'll look at the record more carefully. Well, if it's a judgment order that imposes the costs and the court never imposed them, then he's never been charged these fines. I mean, he wouldn't necessarily have to pay them. And what happened here is he posted a bond. They took this out of his bond. So whatever he was left over with, he walked out of the door with. So if they didn't collect costs on those misdemeanors, they may... Okay, all right. All I'm suggesting is there's another dimension to these issues that doesn't seem to be contemplated when we get the briefs. And here, there's three cases. I assume with the same costs imposed, but you're only challenging one set with respect to the felony. Okay. Sorry. Okay. That's quite all right. It's not meant as a scolding. It's just meant as an observation because we spend so much time on these cost issues that are conceded by the state without kind of this bigger picture of what happens when it goes back to the child. Right. And to be quite honest with you, I think there's a problem with... Okay. I hate to say it. We can debate it another time. Right, absolutely. Thank you, Your Honor. Any other questions? No. Okay, thank you, Your Honors. Thank you. Mr. Arado, good morning. Thank you, Your Honor. Good morning, Your Honors. Good morning. Oh, you know you're going to get questions from me here. Didn't the state just completely miss the boat on this one with the charting instrument? And how do we cure that now? Well, I think the... The charting instrument doesn't state an offense when the victim's a police officer. That is true. Or do you disagree with me? Well, let me back up my answer before by making the preface that I was going to make, that as I discussed with counsel and before, argument that neither of us had discovered the Hale case prior to our writing our opening briefs. And the Fourth District addresses that the A-5 is an element of the offense, regardless of whether it's charged within that. So as far as that goes, I am not... And I recognize that. You're in the hot spot here, and I apologize for the question. No, no, I... We know you didn't draft a charging instrument, so my questions are purely intellectual, not directed at you personally. I appreciate that, Your Honor. And I don't take it personally. I mean, it's like we like to say, it is what it is. We can't do anything other than what we have. But the point, I think, that we learned from Hale is that you don't have to put that in the charging instrument necessarily, that it's kind of implied as an element of the offense. So when you charge a threat to an official and you include the fact that he was a sworn police officer, you then have to include that as a proof that he made a specific threat, not just a general threat. So let me take the second issue first before I go to the first issue, because that's kind of important. Even allowing for the Hale analysis, they don't address the prejudice prong, because even if there's an error in the instruction, even if the element is not included in the instruction, you can still find that there's lack of prejudice in the plain error context. If it was a harmless error, it's a state burden, but here it's a defendant's burden. So now this kind of combines the first issue and the second issue, because what it comes to is, were these threats specific enough to warrant a finding if the jury were properly instructed on all the elements? And our argument is, of course it was, because now when you take the totality, he's saying, well, he's a hothead, he's making general threats, but the point, I think, is when we get to this, right outside the jail, he goes up, he says, there's two witnesses saying, there's Hefner and there's right along St. Clair, saying, I'm going to headbutt you, and then moves towards Hefner, and both Hefner and St. Clair testify that Hefner has to put his arm out to stop the defendant from executing his threat. So that is a specific threat that goes right to the actual issue. And then when you back it up with all these other additional threats, that he is going to, in some, and the statute says future harm as well, so if you want to say, when you retire, now how far in the future do you have to go? We don't know when Hefner's retiring or anything like that. But the point is, when you combine that with this very specific threat, I'm going to headbutt you, and causing Hefner to put an arm out that shows that he is believing that this threat is real, that he's actually going to be making this attack. Justice O'Brien, your comment regarding, your question regarding the threat against the children, I think it is a veiled threat, but as counsel I will concede that it's not a specific threat. You can say, I'm going to get your children and do whatever to them. But I think when you combine all these other things and then the specific threat against him, I think that makes it a lack of prejudice, because even if the jury had been instructed properly, they would have found him guilty. As far as the fine versus our concession, Caballero says that $5 a day credit can be raised at any time. So whether it is imposed by the judge or the clerk, when the defendant gets his bill, he's seeing it, even if it's for the first time, he's saying, oh, I've got to pay this. So what is it that he's going to do? Is he going to go back to the trial judge, who lost jurisdiction in the case at that point, it's more than 30 days later, or is he going to go to the appellate court and say, hey, this is a $5 a day issue under Caballero, we can address it? I mean, if you want us to raise additional money. No, no, no, no, no, no. I'm not telling you how to do your job. Although it probably feels that way, I'm just making you aware of the issue that I don't think the appellate defender is entirely correct when they say the court ordered the imposition of these fines. I understand your concern. No, no, no, no. You do your job the way you need to do it, and I'll do the job I need to do it. For questions, we would ask that you affirm. Thank you. Mr. Cohut, any rebuttal? Just prejudice. The state has argued that there is no prejudice based on this lack of the element instruction. However, it has to remember that there are multiple elements, there are multiple problems in the jury instructions, and the state harps on this headbutt comment saying, well, this was a specific fact indicative of a unique threat. But because the jury was giving contradictory instructions on whether that threat would have placed Officer Hetner in reasonable apprehension of immediate bodily harm, there's no indication that the jury actually found the defendant made that statement. So this is a prejudicial error here. This cause should be remanded, at least for a new trial. Thank you, Your Honor. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel change.